# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESBIA P. J.,[1] | Case No. CV 19-04459-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW M. SAUL,[2] Commissioner of Social Security, | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Lesbia P. J. ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the current Commissioner of Social Security, is hereby substituted as the defendant herein.

## II. PROCEEDINGS BELOW

On or about May 14, 2015, Plaintiff filed a Title II application for DIB alleging disability beginning April 1, 2012 and a Title XVI application for supplemental security income. (Administrative Record ("AR") 297, 442-43.) Her applications were initially denied on September 10, 2015, and upon reconsideration on March 9, 2016. (AR 298-302, 315-18.) Plaintiff filed a written request for hearing, and a hearing was held on March 7, 2018. (AR 56-97, 325.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert and a medical expert. (AR 56-97.) Plaintiff was assisted by a Spanish-English interpreter. (*See id.*) On May 16, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[3] from April 1, 2012, through the date of the decision. (AR 50.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Plaintiff filed this action on May 22, 2019. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). Before beginning the evaluation process, the ALJ found that Plaintiff met the "insured status requirements of the Social Security Act through December 31, 2015." (AR 44.) At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2012, the alleged onset date ("AOD"). (*Id.*) At **step two**, the ALJ found that Plaintiff has the following severe impairments since March 2015: degenerative joint disease in the right knee and obesity. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 45.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can perform occasional postural activities and is illiterate in English." (AR 46.)

At **step four**, the ALJ found that Plaintiff is capable of performing past relevant work as a travel agent, and thus the ALJ did not continue to step five. (AR 50.) Accordingly, the ALJ determined that Plaintiff had not been under a disability from the AOD through the date of the decision. (*Id.*)

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan*

3

*v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.  DISCUSSION

Plaintiff raises two issues for review: (1) whether the ALJ properly assessed Plaintiff's ability to ambulate, and (2) whether the ALJ has properly evaluated Plaintiff's testimony. (*See* Joint Submission ("JS") 3-4.) For the reasons below, the Court affirms.

### A.  The ALJ Properly Evaluated Plaintiff's Testimony[4]

Plaintiff argues that the ALJ "failed to articulate legally sufficient reasons for rejecting the testimony of [Plaintiff]." (JS 23; *see* JS 19-23.) The Commissioner contends that the ALJ "appropriately found Plaintiff's testimony not fully supported by the record." (JS 24; *see* JS 23-26.)

#### 1.  Plaintiff's March 7, 2018 Testimony

Plaintiff is 63 years old. (AR 72.) Plaintiff cannot speak English, but can understand it "a little bit." (AR 73.) She is a U.S. resident and has not applied for U.S. citizenship, but has begun going to school to prepare. (*Id.*)

Plaintiff worked as a travel agent in a Spanish-speaking community. (AR 73.) She went to travel agent school. (AR 74.) As a travel agent, Plaintiff dealt with customers and sold airline tickets. (*Id.*) Because she did not have an office, she would drive from town to town. (*Id.*) During her time working as a travel agent,

---

[4] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of credibility first before discussing the overall RFC determination.

4

Plaintiff worked for several companies. (AR 74-75.) Some companies required that she travel for work. (AR 75.) When she dealt with customers, she was sitting down. (*Id.*) Plaintiff stopped working as a travel agent because her employer would pay her "whenever they wanted to" and "sometimes the checks they issued" did not have funds. (AR 76.) Plaintiff also worked packing shoes for a year. (AR 77-78.) Plaintiff's job entailed walking, standing, and sitting. (AR 78.) Her job required lifting very little weight, about five pounds. (*Id.*) Plaintiff's past work also includes work as a cashier at a bakery and as a telemarketer. (AR 79-80, 89.)

As to her physical abilities, Plaintiff testified that she could sit for 30 to 40 minutes before needing to change positions. (AR 81.) She can stand in one position for about ten minutes. (AR 82.) When standing, Plaintiff needs her walker to balance. (*Id.*) She can walk two blocks before needing to stop and rest. (*Id.*) She can carry a liter of milk. (*Id.*) Plaintiff has "troubles" with her right wrist and fingers, as well as with her shoulder. (AR 82-83.) She does not have "good strength" in her right hand. (AR 83.)

Plaintiff lives with her children. (AR 83.) Plaintiff does not do household chores because she has problems with her hands and back and with walking. (*Id.*) Her children do all the household chores. (*Id.*)

Plaintiff began using a cane in 2014 because her knees were very weak and she would fall in the middle of the street. (AR 83-84.) The cane was prescribed by a doctor. (AR 84.) Plaintiff then began using a walker in August 2015. (AR 84-85.)

## 2. Plaintiff's June 12, 2015 Exertion Questionnaire

Plaintiff lives in a house with family. (AR 511.) She explained that her knee hurts a lot and that she cannot walk fast or walk upstairs. (*Id.*) Plaintiff uses a cane to help her. (*Id.*) Her shoulders hurt and the back of her legs hurt. (*Id.*) She also has "problems to do daily things." (*Id.*) Plaintiff explained that she cannot do daily things like she used to because her knees hurt a lot. (*Id.*) However, Plaintiff tries to "do things little by little"; for example, cleaning would take Plaintiff all day because

5

she has to stop and rest.  (*Id.*)  Plaintiff reported that when she walks "like a block," she has to "look for a place to rest [her] knees."  (*Id.*)  She also reports that she has fallen when crossing the street.  (*Id.*)

Plaintiff climbs one flight of stairs, but gets very tired and her knees hurt.  (AR 512.)  She has to rest, and it takes time for her to get to her house.  (*Id.*)  She is unable to bend.  (*Id.*)  Her back hurts.  (*Id.*)  If something falls, she has a hard time picking it up.  (*Id.*)  She cannot carry "heavy stuff," the only thing she can carry is her purse.  (*Id.*)  She goes grocery shopping with her son every 15 days.  (*Id.*)  She does clean her own home, but she does it "little by little."  (*Id.*)  She has to sit down, so it takes her all day to clean.  (*Id.*)  Plaintiff has difficulty finishing her chores because the pain stops her.  (AR 513.)  Plaintiff drives an automatic car, but does not drive far because her back starts to hurt.  (AR 512.)  She does not work on cars and does not do yard work.  (*Id.*)

Plaintiff sleeps for five hours.  (AR 513.)  She does require rest periods or naps during the day and sometimes rests for "like an hour."  (*Id.*)  Plaintiff takes acetaminophen, 500 mg, once every eight hours.  (*Id.*)  She uses a cane all the time.  (*Id.*)  Plaintiff reports that her knee fails her, and she can fall.  (*Id.*)

### 3.    Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his

symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 4. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 47.) The ALJ found that the "relevant medical evidence and other evidence in the file only partially support [Plaintiff's] statements." (AR 50.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Inconsistent with Medical Evidence

The ALJ reasoned that as to Plaintiff's claims that "she needs an assistive device to ambulate and must alternate sit and stand positions," "[t]he records do not support that the use of an assistive device is medically necessary." (AR 48.) The ALJ relied on the fact that the records show "no significant medical findings." (*Id.*, citing AR 794, 825, 853, 890, 903, 924-25, 991-94.)

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Here, the ALJ relied on a number of examinations which showed "no significant medical findings." (AR 48.) The ALJ found that "[t]he medical evidence shows claimant has degenerative joint disease in the right knee." (AR 47.) Magnetic resonance imaging ("MRI") from August 30, 2013 and September 10, 2013 showed "a torn medial meniscus and oblique tear." (AR 47; *see* AR 620, 624.)

The ALJ also cited to a June 17, 2014 orthopedic evaluation where Plaintiff's cervical and lumbar spine range of motion was found to be "limited by pain in all directions." (AR 47; *see* AR 707-08.) Plaintiff's shoulder range of motion was "limited by pain bilaterally" and her knee range of motion was "limited by pain bilaterally upon flexion." (AR 708.) Plaintiff's "McMurray's test with internal and external rotation [was] positive bilaterally."[5] (*Id.*) "The ALJ summarized these findings as having "revealed a slight decreased range of motion of the knees and positive McMurray's test, and decreased extensor motor strength." (AR 47.) As part of Plaintiff's treatment plan, Bal Rajagopalan, M.D., requested authorization "for [Plaintiff] to be provided with a wheeled walker," because Plaintiff "is having difficulty with gait." (AR 710.) The ALJ reasoned that Dr. Rajagopalan issued the walker based on Plaintiff's subjective complaints "rather than observation of gait disturbance." (AR 47.) Under the heading of "subjective complaints," Dr. Rajagopalan noted "patient reports difficulty with gait. The patient requires the use of a cane. (AR 706-07.)

The ALJ also documented multiple treatment records from 2015. (AR 47.) On April 15, 2015, Plaintiff was found to be alert, not in distress, and "ambulatory with cane." (AR 549.) As to her extremities, Plaintiff showed no clubbing, cyanosis, or edema. (*Id.*) Her knee range of motion was within normal limits and showed no tenderness. (*Id.*) At her July 15, 2015 physical exam, Plaintiff was found to be alert and oriented with no abnormalities detected. (AR 652.) The ALJ noted that the examination notes show that Plaintiff "presented with no assistive device." (AR 47.) On August 14, 2015, Plaintiff underwent an orthopedic consultative examination, where she appeared well-developed and well-nourished, and in no apparent distress. (AR 634.) As to her station and gait, Plaintiff sat comfortably during the exam, but

---

[5] "A McMurray's test is used to determine whether there is an inner meniscal tear." *Withrow v. Colvin*, No. CV 13-1959-AS, 2015 WL 58727, at *4 n.3 (C.D. Cal. Jan. 5, 2015), *aff'd*, 672 F. App'x 748 (9th Cir. 2017).

rose from her chair "with considerable difficulty due to right knee pain." (*Id.*) Her gait was abnormal with "severe right-sided antalgic limp." (*Id.*) Plaintiff used a cane during the examination. (*Id.*) As to her right knee, Plaintiff had tenderness and her range of motion occurs from 0 to 130 degrees with pain and crepitation. (AR 635.) Her left knee was found to have "[f]ull pain-free range of motion." (*Id.*) Plaintiff had "5/5 strength" in her upper and lower extremity, intact sensation in L2-S1 distribution, and her upper extremity axillary, median, radial and ulnar nerves were reportedly intact. (AR 636.)

On January 4, 2016, Plaintiff underwent a physical therapy outpatient examination after being referred to physical therapy for her knee pain. (AR 990.) Plaintiff's upper and lower extremity range of motion was within functional limits. (AR 991.) Plaintiff had left knee crepitus. (*Id.*) She had "good static, fair dynamic standing balance" and complete independence as to her mobility. (AR 992.) Her gait was "antalgic, shuffling." (*Id.*) As to ambulation on level surfaces, the record noted "[r]ehab [c]omplete independence," "with a [single point cane]" and "decreased left stance phase of gait." (*Id.*) Plaintiff's rehabilitation potential was deemed to be "good" and she was issued a front wheel walker. (AR 993.) In February 2016, Plaintiff's back and knee range of motion was within normal limits. (AR 979.) There was no tenderness or gross focal neurological deficit documented. (*Id.*) Similar results were documented on June 7, 2016. (AR 941 ("no pedal edema," "knee rom [within normal limits], no tenderness," and "[n]o gross focal neurological deficit").)

On July 7, 2016, Plaintiff reported that she fell because she missed a step. (AR 923.) Plaintiff normally used a single-point cane for ambulation, but "the cane hurts her arm and she feels safer using a walker." (*Id.*) Plaintiff was using a rollator walker that she got from church. (*Id.*) Her lower extremity range of motion was within functional limits. (AR 925.) As to ambulation, Plaintiff was completely independent with a rollator walker. (*Id.*) A test of Plaintiff's gait showed she had "limited stance

on left with [left] knee buckling during stance." (*Id.*)

The ALJ found that the "record shows [Plaintiff] had a walker, however, she had no abnormal findings until June 2017." (AR 48, citing AR 853, 890, 903.) Examinations on June 2, 2017 and October 17, 2017 showed Plaintiff had slightly decreased knee range of motion, but no pedal edema or tenderness, and no gross focal neurological deficit. (AR 48; *see* AR 794, 825.) A June 2, 2017 x-ray of Plaintiff's knees showed "bilateral medial and patellofemoral compartmental narrowing with osteophyte formation," but no fracture or joint effusion. (AR 820.) Additionally, small densities along the right posterior joint line were consistent with intra-articular bodies and were similar in appearance to a prior study. (*Id.*) A larger density was also identified and found to likely represent a fabella. (*Id.*) The ALJ ultimately found that "[t]he record shows minimal findings on exam and an inconsistent use of an assistive device." (AR 48.)

Plaintiff contends that the record shows that Plaintiff has an antalgic gait without the assistive device and is ambulatory with a walker. (JS 20-21.) Additionally, Plaintiff notes that "she does not have positive straight leg raise or decreased strength . . . because she does not have nerve involvement, but deterioration of her knees, specifically fissuring of the covering and pads in her knees warranting knee replacement rather than simple arthroscopy." (JS 21, citing AR 132, 201, 223, 228, 231, 233, 634, 707, 710, 794, 853, 869, 890, 903, 923, 934, 941, 953, 965, 987-89, 992-995.) However, Plaintiff does not make any substantive argument.[6] (*See* JS 20-21.) Plaintiff notes that she suffered a work-related injury in 2011. (JS 5, citing AR 453.) She was prescribed a walker in 2014 (AR 233), and then again in 2016 (AR 988-89).

The Court finds that the ALJ thoroughly considered Plaintiff's medical records

---

[6] Plaintiff does note that she "will not repeat the first section." (JS 20.) In the "first section," Plaintiff primarily recounts her medical history. (JS 4-16.) Where Plaintiff makes an argument relative to the ALJ's assessment of Plaintiff's testimony in the first section, the Court will address Plaintiff's arguments.

(*see* AR 47-48) and found that the records did not support Plaintiff's allegations of disabling symptoms and limitations (*see* AR 48). *See Reddick*, 157 F.3d at 725. Throughout the records are examination notes and reports showing normal results, all of which the ALJ was permitted to rely on in assessing Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations); *Margolis v. Berryhill*, No. CV 17-5047 SS, 2018 WL 3129775, at *10 (C.D. Cal. June 22, 2018) (holding that ALJ may rely on normal and unremarkable examinations in discounting a claimant's subjective testimony). While other evidence in the records supports Plaintiff's testimony, the ALJ was allowed to weigh the multiple normal examination results in evaluating Plaintiff's testimony. Where, as here, the evidence might be susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *See Ryan*, 528 F.3d at 1198 (citing *Burch*, 400 F.3d at 679); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). Accordingly, the inconsistency between Plaintiff's testimony and the medical evidence in the record is a specific, clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

### b.      Reason No. 2: Inconsistent Conduct

The ALJ discounted Plaintiff's statements because the records show Plaintiff did not use an assistive device on multiple occasions. (AR 48.) An ALJ may rely on "ordinary techniques of credibility evaluation," *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted), including "inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct," *Molina*, 674 F.3d at 1112. *See Smith v. Berryhill*, No. EDCV 16-2643 SS, 2017 WL 3238202, at *10 (C.D. Cal. July 31, 2017) (finding ALJ properly rejected plaintiff's testimony where ALJ cited to substantial evidence of plaintiff's conduct that was inconsistent

with the severity of the symptoms alleged).  While "a single discrepancy fails to justify the wholesale dismissal of a claimant's testimony," *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017), the ALJ cited to "multiple occasions" where Plaintiff did not use an assistive device (AR 48).  The ALJ relied on a July 15, 2015 physical examination where the general examination resulted in "NAD," no abnormalities detected.  (AR 652.)  Additionally, the ALJ noted a September 21, 2016 emergency room visit where Plaintiff did not have an assistive device.  (AR 48; *see* AR 671.)  While, the ALJ also pointed to other records where Plaintiff did use an assistive device (AR 48, citing AR 941, 981), the ALJ reasoned that the record did "not support . . . the use of an assistive device is medically necessary" and "does not support the alleged loss of function" (AR 48).

Plaintiff contends that the "assistive device is not noted on only one or two occasions."  (JS 21.)  Additionally, Plaintiff contends that "[e]ven if Plaintiff had a miracle month and was just fine for that month, a window of brief improvement, this type of observation must be 'read in context of the overall diagnostic picture' the provider draws."  (JS 16 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001)).)  Notably, the ALJ does not cite to these instances as constituting "improvement."  (*See* AR 46-49.)  Instead, the ALJ finds that because Plaintiff did not use the device on these occasions, her alleged loss of functioning is not supported by the record.  (AR 48.)  The ALJ relied on two instances, one in 2015 and one in 2016, in which Plaintiff was not using the assistive device.  (AR 48.)  Additionally, Plaintiff does not dispute the veracity or accuracy of the records.  "Where evidence may be susceptible to more than one rational interpretation," the ALJ's decision should be upheld.  *Orn*, 495 F.3d at 630 (citing *Burch*, 400 F.3d at 679).  Accordingly, this was a specific, clear and convincing reason for the ALJ to discount Plaintiff's subjective symptom testimony.

### c.    Reason No. 3: Activities of Daily Living[7]

The ALJ found that "the record shows [Plaintiff] is 'completely independent at home' and is able to shop, drive, clean her house, and climb a flight of stairs." (AR 48.)  Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility.  *See Tommasetti*, 533 F.3d at 1039; *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  But a claimant need not be utterly incapacitated to obtain benefits.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  However, "[a]n ALJ errs when he or she mischaracterizes a claimant's testimony by ignoring reports that daily activities are conducted with assistance, with great pain, or with limitation-related disruptions."  *Furtado v. Colvin*, No. 13-CV-04063-HRL, 2017 WL 1365208, at *3 (N.D. Cal. Apr. 14, 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)).

Plaintiff contends that Plaintiff's "level of activities would not rise to the level

---

[7] Plaintiff appears to argue that the ALJ had a duty to develop the record as to Plaintiff's activities of daily living. (AR 21-22.)  "[T]he ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel."  *Mayes*, 276 F.3d at 459; *Laura G. v. Berryhill*, 357 F. Supp. 3d 1023, 1029 (C.D. Cal. 2019).  "The ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation."  *Mayes*, 276 F.3d at 459.  Here, the ALJ relied on Plaintiff's June 12, 2015 Exertion Questionnaire in evaluating Plaintiff's activities.  (*See* AR 47.)  There is no indication that there was any ambiguity or that the record was inadequate, and Plaintiff does not point to any ambiguity or inadequacy, but instead only takes issue with the fact that the ALJ did not present the inconsistencies to Plaintiff before issuing the order.

of full-time activity at any level of exertion and the ALJ's articulations are insufficient." (JS 22.) Plaintiff appears to contend that the ALJ mischaracterized the evidence because Plaintiff "is independent *with the walker*," and is "independent with rest breaks." (JS 21 (emphasis in original), citing AR 924, 925.)

Here, the ALJ noted that Plaintiff was "completely independent at home." (AR 48.) In support, the ALJ cited to a July 7, 2016 examination, but the cited page does not include language regarding Plaintiff's independence. (*See* AR 923.) The Court's review of the examination shows that Plaintiff's "Prior Level of Function" was noted to be independent, with rest breaks as to activities of daily living, and independent as to Plaintiff's mobility, instrumental activities of daily living, and cognitive-communication skills. (AR 924.) However, Plaintiff's mobility was noted as being modified independence. (AR 925.) As to Plaintiff's ambulation, Plaintiff was noted to have complete independence with a rollator walker. (*Id.*)

Additionally, the ALJ noted that Plaintiff is able to "shop, drive, clean her house, and climb a flight of stairs." (AR 48.) The ALJ cites to "9E," Plaintiff's Exertion Questionnaire. (*See* AR 511-13.) While Plaintiff does note that she goes *grocery* shopping, she goes with her son and only every 15 days. (AR 512.) Plaintiff also drives, but does not drive far "because [her] back starts hurting." (*Id.*) Additionally, she does chores, but it takes her all day. (AR 513.) Plaintiff climbs stairs, but she notes that she gets "very tired" and her "knees hurt a lot." (AR 512.)

Here, the ALJ mischaracterized Plaintiff's statements and the July 7, 2016 examination. The ALJ's mischaracterization cannot support the ALJ's finding that Plaintiff's activities of daily living were inconsistent with Plaintiff's subjective symptom testimony. *See Rawa v. Colvin*, 672 F. App'x 664, 666 (9th Cir. 2016) (finding that where "the ALJ omitted a number of salient and dispositive facts and details when recounting [claimant's] activity level," including the fact that claimant drove only a couple of times per week and the fact that she experienced pain while engaged in certain activities, "[s]uch an inaccurate representation of the record cannot

14

constitute a specific, clear, and convincing reason for rejecting" claimant's subjective symptom testimony); *Corless v. Comm'r of Soc. Sec. Admin.*, 260 F. Supp. 3d 1172, 1178 (D. Ariz. 2017) (finding that the ALJ committed error where the "ALJ conspicuously omitted the pain and difficulties [p]laintiff experiences performing even the simplest daily activity"). Accordingly, this was not a specific, clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

### 5. Conclusion

The Court finds that the ALJ gave two specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding ALJ's reliance on an invalid reason to discredit claimant testimony was "harmless error" where ALJ relied on other specific, clear and convincing reasons). As such, the ALJ properly evaluated Plaintiff's subjective complaints.

## B. **The ALJ Properly Assessed Plaintiff's Ability to Ambulate Effectively**

Plaintiff contends that the ALJ failed to assess Plaintiff's "need for assistive devices." (JS 16; *see* JS 4-16.) Plaintiff argues that the ALJ erred in dismissing the "sole consultative examiner's opinion that [Plaintiff] required a cane" and giving great weight to medical expert, Darius Ghazi, M.D. (JS 4.) Additionally, Plaintiff appears to argue that the ALJ erroneously dismissed the longitudinal record.[8] (*Id.*) The Commissioner contends that "the ALJ's RFC finding is supported by substantial evidence and free from legal error." (JS 18; *see* JS 17-19.) Additionally, the Commissioner contends that Plaintiff failed to establish that any error by the ALJ was harmful. (JS 16.)

The ALJ is responsible for assessing a claimant's RFC "based on all of the

---

[8] Plaintiff also notes that the ALJ dismissed Plaintiff's testimony. (JS 4.) Plaintiff's argument that the ALJ erred in assessing Plaintiff's testimony is discussed in Section IV.A.

relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3), 404.1546(c); *see Robbins*, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. § 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan*, 169 F.3d at 599.

### 1. Opinion Evidence

Plaintiff argues that the ALJ erred by rejecting the opinions of Richard Pollis, M.D., and Dr. Rajagopalan, and relying on Dr. Ghazi's opinion. (*See* JS 4, 6, 11-12.)

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison*, 759 F.3d at 1012.

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'"

*Garrison*, 759 F.3d at 1012 (citation omitted).

In determining Plaintiff's RFC, the ALJ considered the opinions of Dr. Ghazi, Dr. Pollis, and Dr. Rajagopalan. (AR 48-50.)

On August 14, 2015, Dr, Pollis completed an orthopedic consultation. (AR 632-37.) After examining Plaintiff, Dr. Pollis opined that Plaintiff was able to carry and lift 10 pounds occasionally, but could lift less than 10 pounds frequently. (AR 637.) Additionally, Plaintiff was found to be capable of standing and walking two hours out of an eight-hour workday with breaks and the use of a cane for short distances. (*Id.*) Plaintiff was also found to be capable of sitting for six hours of an eight-hour workday, with appropriate breaks. (*Id.*) She could occasionally push or pull with her upper and lower extremities. (*Id.*) Dr. Pollis also found Plaintiff had "postural limitations for occasional bending, climbing, stooping, kneeling[,] and crouching." (*Id.*) However, Dr. Pollis found there were "no manipulative, visual, communicative or environmental limitations." (*Id.*)

The ALJ gave "great weight to Dr. Pollis' opinion with respect to the ability to perform sedentary exertion; however, the remainder of his opinion is given little weight." (AR 49.) Because Dr. Pollis is an examining physician, the ALJ must provide specific and legitimate reasons for rejecting his opinion. *See Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830. However, "[a]n ALJ needs less substantial evidence to reject an examining physician's opinion than to reject a[] treating physician's opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). First, the ALJ reasoned that the evidence "did not support an impairment that would significantly affect the manipulative activities." (*Id.*) "An ALJ may properly reject . . . an examining physician's opinion that is inconsistent with the medical record." *Jacob v. Astrue*, No. CV 07-6118-RC, 2008 WL 4330266, at *4 (C.D. Cal. Sept. 18, 2008) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Morgan*, 169 F.3d at 602). Here, the ALJ relied on medical records showing "no grossly abnormal upper extremity findings." (AR 49, citing AR 611-13, 707-08, 719-

17

20, 739-40, 899, 903.)  Thus, the ALJ properly discounted Dr. Pollis' opinion on this basis.  *See Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 602.

Second, the ALJ noted that there was no substantial treatment for neck or upper extremity conditions.  (AR 49.)  The ALJ may reject or discount a physician's opinion, where the treatment is inconsistent with the physician's opinion.  *See Rollins*, 261 F.3d at 856 (ALJ reasonably discounted a treating physician's opinion where conservative treatment was inconsistent with symptoms one would expect if claimant was disabled).  Here, the ALJ cites to over two-hundred pages of the administrative record.  (AR 49.)  Merely stating that evidence is contrary to the opinion evidence, without relating that evidence to specific rejected opinions and findings, is inadequate.  *Embrey*, 849 F.2d at 421; *see Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").  Here, the ALJ simply states that there is "no substantial treatment for neck or upper extremity conditions," but does not state that there was *no* treatment and does not find that the treatment that was provided is inconsistent with Dr. Pollis' findings.  (*See* AR 49.)  Accordingly, the ALJ did not properly discount Dr. Pollis' opinion on this basis.

Finally, the ALJ discounted Dr. Pollis' opinion as to the "need for an assistive device [because] the evidence shows either inconsistent use or minimal objective findings to support that it is medically necessary."  (AR 49.)  Plaintiff contends that "the record consistently states that [Plaintiff] is ambulatory with an assistive device."  (JS 12.)  Plaintiff appears to contend that the ALJ's reliance on "two dates where Dr. Saw did not record that [Plaintiff] was ambulatory with a cane or walker . . . is outweighed by every other visit, noting she is ambulatory with a cane[,] then a walker as her disease progressed.  (*Id.*)  Plaintiff recounts the September 22, 2016 emergency room visit and notes that the visit was for "abdominal issues and cannot be read as a

total evaluation." (*Id.*)  Plaintiff also recounts her medical history and points to other medical evidence in support of her claim.  (JS 4-12.)

As discussed above in connection with Plaintiff's subjective symptom testimony, the ALJ thoroughly reviewed the medical records and found that the need for an assistive device was not supported by the record and was unsupported by Plaintiff's conduct.  (*See* supra Section IV.A.)  Where, as here, the evidence might be susceptible to more than one rational interpretation, the ALJ's decision should be upheld.  *See Ryan*, 528 F.3d at 1198 (citing *Burch*, 400 F.3d at 679); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  Thus, the ALJ properly discounted Dr. Pollis' opinion on this basis.

Because the ALJ has provided two specific and legitimate reasons for discounting Dr. Pollis' opinion, "[a]ny error in relying on additional reasons to reject [Dr. Pollis'] opinion was harmless."  *See Barney v. Berryhill*, 769 F. App'x 465, 466 (9th Cir. 2019) (mem.).  Accordingly, the ALJ properly weighed Dr. Pollis' medical opinion.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) ("An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence").

As to Dr. Rajagopalan, the ALJ found that Dr. Rajagopalan's conclusion that Plaintiff was "temporarily totally disabled" had "no probative value" and rejected the evidence.  (AR 49.)  The ALJ reasoned that Dr. Rajagopalan's opinion is "on an issue reserved to the Commissioner," thus the "statement is not entitled to controlling weight and is not given special significance."  (*Id.*)  The ALJ concluded that "the conclusion by a physician [that] claimant is 'temporarily totally disabled' in the context of a workers' compensation case is not relevant with regard to the claimant's application under the Social Security Act."  (AR 49.)  However, the ALJ considered the "objective and clinical and diagnostic evidence used by the physician to come to

that conclusion and included in the physician's report." (AR 48-49.)

An "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)). "Instead, the ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion." *Id.* However, a physician's opinion on the ultimate disability determination is not entitled to any special significance. *See* SSR 96-5p, 1996 WL 374183, at *1.

Here, the ALJ rejected Dr. Rajagopalan's opinion that Plaintiff was "temporarily totally disabled" simply because it was rendered in the context of workers' compensation. (AR 49.) Additionally, the ALJ did not discuss any of the Dr. Rajagopalan's findings, including Plaintiff's alleged need for an ambulatory assistive device. (*See* AR 49, 706-15, 727.) "[T]he ALJ was not permitted to reject or discount these opinions merely because a workers' compensation determination is not controlling on the ultimate issue of disability." *Tafoya v. Berryhill*, No. ED CV 17-02402-DFM, 2019 WL 917057, at *3 (C.D. Cal. Feb. 25, 2019). The ALJ did not offer any other reasons for rejecting Dr. Rajagopalan's opinion. Accordingly, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Rajagopalan's opinion.

Instead, the ALJ gave "great weight" to the opinion of Dr. Ghazi who reviewed Plaintiff's case record and understood the evidentiary requirements of social security disability programs. (AR 49.) The ALJ found his opinion to be consistent with the record as a whole. (AR 48-49.)

While the ALJ erred in evaluating Dr. Rajagopalan's opinion, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. "[T]he burden of showing that an error is harmful normally falls upon

the party attacking the agency's determination." *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009)).   An ALJ's error is harmless so long as it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

The Commissioner argues that Plaintiff has failed to establish that any error is harmful.  (JS 16.)  The Commissioner notes that "Plaintiff argues that the ALJ erred in failing to conclude that she needed a walker or a cane for effective ambulation." (*Id.*)  Specifically, the Commissioner contends that the ALJ found Plaintiff able to "perform her prior, sedentary work as a travel agent," but that "[n]othing in the job description of the travel agent occupation suggests that Plaintiff would need to engage in substantial walking."   (JS 17.)   Plaintiff does not respond to the Commissioner's argument and does not contend that there is anything inconsistent between a sedentary RFC and the ALJ's final determination that she could perform her past relevant work as a travel agent.  (*See* JS 1-29.)

Here, the ALJ's error in assessing Dr. Rajagopalan's opinion was harmless. The ALJ previously rejected the opinion that Plaintiff needed to use an assistive device to ambulate.  (*See* AR 48-49.)  Additionally, the ALJ found that Plaintiff was limited to a sedentary work.  (AR 46.)  Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*  While the "[u]se of a cane may limit a claimant's ability to perform light work . . . it is less likely to preclude sedentary work." *Contreras v. Berryhill*, No. CV 16-6650-JPR, 2017 WL 2798521, at *7 (C.D. Cal. June 28, 2017).  Plaintiff does not point to any evidence that the use of an assistive device would preclude sedentary work. *See Huizar v. Astrue*, No. CV 11-7246-PLA, 2012 WL 3631526, at *4-5 & n.3 (C.D. Cal. Aug. 23,

2012) (finding that ALJ's error was harmless where ALJ limited plaintiff to sedentary work and "plaintiff cites no authority for the proposition that the use of a cane occasionally or when walking up steep hills, even if prescribed by a doctor, would preclude an RFC for sedentary work") (citing *Tommasetti*, 533 F.3d at 1038, 1042; *Tate v. Astrue*, 431 F. App'x 565, 566 (9th Cir. May 5, 2011); *Papen v. Comm'r of Social Sec. Admin.*, 349 F. App'x 205, 208 (9th Cir. Oct.21, 2009)). Accordingly, the Court finds that the ALJ's error was harmless and remand is not warranted on this basis.

### 2. Objective Medical Evidence

Plaintiff points to other evidence in support of her contention that the ALJ failed to properly assess her ability to ambulate effectively. (JS 4-16.) As discussed above in connection with Plaintiff's subjective complaints, the ALJ thoroughly reviewed the medical records presented by Plaintiff. (*See* AR 46-49.) Where, as here, the evidence might be susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *See Ryan*, 528 F.3d at 1198 (citing *Burch*, 400 F.3d at 679); *see Robbins*, 466 F.3d at 882.

### 3. Conclusion

In sum, the Court finds that the ALJ did not err in assessing Plaintiff's ability to ambulate. While the ALJ erred in evaluating and weighing the opinion of Dr. Rajagopalan, the error was harmless.

///

///

///

///

///

## V. **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

1     IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

2   Order and the Judgment on counsel for both parties.

3

4   DATED:  March 24, 2020        _____
                                   ROZELLA A. OLIVER
5                                  UNITED STATES MAGISTRATE JUDGE

6

7   `

8                              **NOTICE**

9   **THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW,**
    **LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28